**COTCHETT, PITRE & McCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
Mark C. Molumphy (SBN 168009)
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: 650-697-6000
Facsimile: 650-697-0577
*jcotchett@cpmlegal.com*
*mmolumphy@cpmlegal.com*

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206243)
350 Sansome Street, Suite 400
San Francisco, California 94104
Telephone: 415-772-4700
Facsimile: 415-772-4707
*lking@kaplanfox.com*

*Plaintiffs' Counsel*

*Additional Counsel on Signature Page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| ALEX RODRIGUEZ, *et al.*, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| APPLE INC., | |
| Defendant. | |

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 4

JURISDICTION AND VENUE ......................................................................................... 4

INTRADISTRICT ASSIGNMENT ................................................................................... 4

PARTIES ............................................................................................................................ 5

    A.   PLAINTIFFS .......................................................................................................... 5

    B.   DEFENDANT AND ITS RELEVANT CORPORATE STRUCTURE ................ 11

SUBSTANTIVE ALLEGATIONS .................................................................................. 11

CHOICE OF LAW ........................................................................................................... 15

CLASS ALLEGATIONS ................................................................................................. 16

TOLLING OF APPLICABLE LIMITATIONS PERIODS ............................................. 19

CLAIMS FOR RELIEF ................................................................................................... 19

        COUNT 1
        VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT, ............... 19

        COUNT 2
        VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT, .................. 20

        COUNT 3
        VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW, ...... 22

        COUNT 4
        VIOLATIONS OF CALIFORNIA'S FALSE AND MISLEADING ADVERTISING
        LAW, ................................................................................................................. 26

        COUNT 5
        CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT, ................. 28

        COUNT 6
        TRESPASS TO CHATTELS .............................................................................. 29

        COUNT 7
        FRAUD .............................................................................................................. 30

COUNT 8
BREACH OF CONTRACT .............................................................................................. 31

COUNT 9
BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING .............................. 32

COUNT 10
MONEY HAD AND RECEIVED ..................................................................................... 33

COUNT 11
QUASI-CONTRACT / UNJUST ENRICHMENT.............................................................. 34

PRAYER FOR RELIEF ............................................................................................................. 34

JURY DEMAND......................................................................................................................... 35

**INTRODUCTION**

1.      Plaintiffs file this Class Action Complaint against Apple Inc. ("Apple," the "Company," or "Defendant") on behalf of themselves and all others similarly situated who purchased, owned, used, or leased one or more of Apple's Devices[1] for fraudulent misrepresentations and omissions, and other unlawful and unfair business practices.

**JURISDICTION AND VENUE**

2.      This Court has federal question subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiffs allege that Apple violated, among other things, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*

3.       This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, and Apple is a citizen of a State different from that of at least one class member. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

4.      Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because Apple's principal place of business is located in this District and substantial parts of the events or omissions giving rise to the claims occurred in the District. Venue is also proper in this Court because Apple is located here and the causes of action arose here.

**INTRADISTRICT ASSIGNMENT**

5.      Assignment of the cases originally filed within this District is proper to the San Jose Division under Local Rule 3-2-(e), as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Santa Clara County, California.

---

[1] As used herein, the term "Devices" are the following products designed and marketed by Apple for sale: the iPhone 5, iPhone 5s, iPhone 5c, iPhone SE, iPhone 6, iPhone 6s, iPhone 6 Plus, iPhone 6s Plus, iPhone 7, and iPhone 7 Plus, the Fourth Generation iPad, iPad Mini, iPad Air, iPad Mini 2, Update to Fourth Generation iPad, iPad Air 2, iPad Mini 3, iPad Mini 4, iPad Pro, 9.7-Inch iPad Pro, Fifth Generation iPad, iPad Pro 10.5-inch and 12.9 inch models, and Sixth Generation iPad.

# PARTIES

**A.     Plaintiffs**

6.      Plaintiff Alex Rodriguez is a citizen and resident of the State of Alaska and acquired one or more Devices in the State of Arizona.

7.      Plaintiff Loren Haller is a citizen and resident of the State of Alaska and acquired one or more Devices.

8.      Plaintiff Jonathan David is a citizen and resident of the State of Arkansas and acquired one or more Devices in the State of Arizona.

9.      Plaintiff Daphne Bowles Rodriguez is a citizen and resident of the State of Arizona and acquired one or more Devices.

10.     Plaintiff Laura Gail Diamond is a citizen and resident of the State of California and acquired one or more of the Devices.

11.     Plaintiff Heidi Valle is a citizen and resident of the State of California and acquired one or more of the Devices.

12.     Plaintiff Ida Villegas is a citizen and resident of the State of California and acquired one or more of the Devices.

13.     Plaintiff Susan Rutan is a citizen and resident of the State of California and acquired one or more Devices in the State of Oregon.

14.     Plaintiff Steven Connolly is a citizen and resident of the State of Idaho and acquired one or more Devices in the State of Colorado.

15.     Plaintiff Bryan Schell is a United States citizen and resident of France and acquired one or more Devices in the State of Colorado.

16.     Plaintiff Aisha Boyd is a citizen and resident of the State of Delaware and acquired one or more Devices.

17.     Plaintiff Irwin Darack is a citizen and resident of the Commonwealth of Pennsylvania and acquired one or more Devices in the State of Delaware.

18.     Plaintiff Brandi White is a citizen and resident of the District of Columbia and acquired one or more Devices.

19.     Plaintiff Jason Ratner is a citizen and resident of the State of Georgia and acquired one or more Devices.

20.     Plaintiff Tamica Gordon is a citizen and resident of the State of Georgia and acquired one or more Devices.

21.     Plaintiff Eric Tanovan is a citizen and resident of the State of California and acquired one or more Devices in the State of Hawaii and the State of Oregon.

22.     Plaintiff Linda Sauer is a citizen and resident of the State of Idaho and acquired one or more Devices.

23.     Plaintiff Rifah Alexander is a citizen and resident of the State of Illinois and acquired one or more Devices.

24.     Plaintiff Andrew Yashchuk is a resident and citizen of the State of Texas and purchased one or more Devices in the State of Illinois.

25.     Plaintiff Alisha Boykin is a citizen and resident of the State of Indiana and acquired one or more Devices.

26.     Plaintiff Tammy Greenfield is a citizen and resident of the State of Iowa and acquired one or more Devices.

27.     Plaintiff Natasha Bryant is a citizen and resident of the State of Kansas and acquired one or more Devices.

28.     Plaintiff John Farris is a citizen and resident of the State of Texas and acquired one or more Devices in the State of Kansas.

29.     Plaintiff Herman Praszkier is a citizen and resident of the Commonwealth of Kentucky and acquired one or more Devices.

30.     Plaintiff Lawrence Pethick is a citizen and resident of the State of Michigan and acquired one or more Devices in the Commonwealth of Kentucky.

CLASS ACTION COMPLAINT                    6

31.     Plaintiff Kenyotta Smith is a citizen and resident of the State of Louisiana and acquired one or more Devices.

32.     Plaintiff Judith Thompson is a citizen and resident of the State of Maine and acquired one or more Devices.

33.     Plaintiff Drew Victory is a citizen and resident of the State of Maine and acquired one or more Devices.

34.     Plaintiff Johnjulee Ray is a citizen and resident of the State of Maryland and acquired one or more Devices.

35.     Plaintiff Aja Johnson is a citizen and resident of the Commonwealth of Massachusetts and acquired one or more Devices.

36.     Plaintiff Steven Henry is a citizen and resident of the State of Michigan and acquired one or more Devices.

37.     Plaintiff Timothy Baldwin is a citizen and resident of the State of Michigan and acquired one or more Devices.

38.     Plaintiff Kristin Hansen is a citizen and resident of the State of Minnesota and acquired one or more Devices.

39.     Plaintiff Mary Jackson is a citizen and resident of the State of Mississippi and acquired one or more Devices.

40.     Plaintiff Alvin Davis is a citizen and resident of the State of Mississippi and acquired one or more Devices.

41.     Plaintiff Christopher Gautreaux is a citizen and resident of the State of Missouri and acquired one or more Devices.

42.     Plaintiff Charlie Bell Daily is a citizen and resident of the State of Missouri and acquired one or more Devices.

43.     Plaintiff Michelle Martino is a citizen and resident of the State of Montana and acquired one or more Devices.

CLASS ACTION COMPLAINT                7

44.　　Plaintiff Kevin Browne is a citizen and resident of the State of Nebraska and acquired one or more Devices.

45.　　Plaintiff Jill Klingman is a citizen and resident of the State of Nebraska and acquired one or more Devices.

46.　　Plaintiff Angela Boykin is a citizen and resident of the State of Nevada and acquired one or more Devices.

47.　　Plaintiff Barbara Moriello is a citizen and resident of the State of Nevada and acquired one or more Devices.

48.　　Plaintiff Thomas Toth is a citizen and resident of the State of New Hampshire and acquired one or more Devices.

49.　　Plaintiff Caren Schmidt is a citizen and resident of the State of New Jersey and acquired one or more Devices.

50.　　Plaintiff Jacquelyn O'Neill is a citizen and resident of the State of New Jersey and acquired one or more Devices.

51.　　Plaintiff Brandon Farmer is a citizen and resident of the State of New Mexico and acquired one or more Devices.

52.　　Plaintiff Patrick DeFellippo is a citizen and resident of the State of New Mexico and acquired one or more Devices.

53.　　Plaintiff Sherri Yelton is a citizen and resident of the State of North Carolina and acquired one or more Devices.

54.　　Plaintiff Brinley McGill is a citizen and resident of the State of North Carolina and acquired one or more Devices.

55.　　Plaintiff Sarah Stone is a citizen and resident of the State of Oklahoma and acquired one or more Devices.

56.　　Plaintiff Megan Mesloh is a citizen and resident of the State of Oregon and acquired one or more Devices.

57.     Plaintiff Beckie Erwin is a citizen and resident of the Commonwealth of Pennsylvania and acquired one or more Devices.

58.     Plaintiff Darlane Saracina is a citizen and resident of the Commonwealth of Pennsylvania and acquired one or more Devices.

59.     Plaintiff Brian Macinanti is a citizen and resident of the State of Rhode Island and acquired one or more Devices.

60.     Plaintiff Stephen Heffner is a citizen and resident of the State of Rhode Island and acquired one or more Devices.

61.     Plaintiff Denise Bakke is a citizen and resident of the State of South Dakota and acquired one or more Devices.

62.     Plaintiff Jodi Johnson is a citizen and resident of the State of Tennessee and acquired one or more Devices.

63.     Plaintiff Henry Becker is a citizen and resident of the State of Utah and acquired one or more Devices.

64.     Plaintiff Georgiana D'Alessandro is a citizen and resident of the State of Vermont and acquired one or more Devices.

65.     Plaintiff Aurelia Flores is a citizen and resident of the Commonwealth of Virginia and acquired one or more Devices.

66.     Plaintiff Kristopher Kingston is a citizen and resident of the State of Washington and acquired one or more Devices.

67.     Plaintiff Tonya Thompson is a citizen and resident of the State of West Virginia and acquired one or more Devices.

68.     Plaintiff Kyle Herman is a citizen and resident of the State of Wisconsin and acquired one or more Devices.

69.     Plaintiff Quinn Lewis is a citizen and resident of the State of Wyoming and acquired one or more Devices.

70.     Plaintiff Shiriam Torres is a resident and citizen of Puerto Rico and acquired one or more Devices.

71.     Plaintiff Adam Shapiro is a resident and citizen of the United States Virgin Islands and acquired one or more Devices.

72.     Plaintiff Hanpeng Chen is a resident and citizen of Canada and acquired one or more Devices.

73.     Plaintiff Kaixuan Ni is a permanent resident of the United States residing in California and a citizen of the People's Republic of China and acquired one or more Devices.

74.     Plaintiff Juliana Caceres is a citizen and resident of Colombia and she purchased one or more Devices.

75.     Plaintiff Linda Sonna is a citizen of the United States and permanent resident of Mexico and acquired one or more Devices.

76.     Plaintiff Nakul Chandra is a citizen and resident of India and acquired one or more Devices.

77.     Plaintiff Arisa Wakabayashi is a citizen and resident of Japan, temporarily living in New York, and acquired one or more Devices.

78.     Plaintiff Burim Daci is a citizen and resident of Norway and acquired one or more Devices.

79.     Plaintiff Pedro Espejo is a citizen and resident of the Peru and acquired one or more Devices.

80.     Plaintiff Roman Dubianskii is a citizen and resident of Russia and acquired one or more Devices.

81.     Plaintiff Heekyung Jo is a citizen and resident of South Korea and acquired one or more Devices.

82.     Plaintiff Youngro Lee is a citizen and resident of South Korea and acquired one or more Devices.

83.     Plaintiff Kushagra Sharma is a citizen and resident of the United Kingdom and acquired one or more Devices.

**B.      Defendant and Its Relevant Corporate Structure**

84.     Apple Inc. ("Apple"), is a corporation that was created under the laws of the State of California, and has its principal place of business in Cupertino, California.  Apple is the world's largest information technology company by revenue and the world's third-largest mobile phone manufacturer.  There are currently over one billion Apple products in active use worldwide.

## SUBSTANTIVE ALLEGATIONS

85.     After years of customer frustration and attrition, on December 20, 2017, Apple admitted to one of the largest consumer frauds in history, affecting hundreds of millions of mobile devices across the globe.  Prompting the admission were reports of unexplained shutdowns of certain Devices surfacing more than two years earlier, with consumers complaining their Devices were suddenly shutting down even though the batteries were more than 30% charged.  Complaints accelerated in the autumn of 2016 and were accompanied by reports of unexplained heating.

86.     Despite the growing chorus of complaints, Apple remained silent until November 2016, when it finally admitted a problem, but limited its admission to a small serial range of iPhone 6s Devices manufactured in September and October 2015 because the batteries were exposed to "ambient air" during assembly.  Apple charged $79 in the United States to replace a battery at the time (and a similar price outside of the United States), but offered a free battery replacement to this small number of owners of Devices in the "limited serial range."

87.     Within days of Apple's November 2016 announcement, it became clear that a far greater number of Devices were affected than Apple was letting on.  Various media investigations revealed that the "bug" extended beyond the originally-identified iPhone 6s devices.

88.     Then, 2017 arrived, and Apple installed software updates on the Devices to gather additional diagnostic data in early January 2017.  Based in part on that diagnostic data, on January 23, 2017, Apple released a software update, known as iOS 10.2.1.  Apple told consumers that the

update was to fix "bugs" or improve "security" on the Devices and a month later, Apple publicly disclosed that the software update had largely addressed the shutdown problem.

89.     Missing from these statements to consumers or to the tech press was the true purpose of the software update—to conceal a much larger defect than the public knew—namely, there was a mismatch between the Devices' hardware, including their processing chips and rechargeable lithium-ion batteries, and the ever-increasing demands placed on the Devices via Apple's constantly-updating iOS software platform.  This mismatch is referred to as the "Defect(s)."  And the software update did not "fix" or "cure" the Defect—it instead concealed it by secretly throttling the Devices' performance to reduce the number of unexpected shutdowns to a more manageable volume.  Apple partially "cured" one defect by making another defect more aggressive— accomplished by violating federal computer fraud laws and a host of various state laws.  For eleven months, the secret remained uncovered as Apple continued to hide the whole truth.

90.     Apple's throttling did not stop at iOS 10.2.1.  On December 2, 2017, another set of throttling code was inserted in iOS 11.2[2], but Apple again told consumers the update was primarily to fix "bugs" and provide "improvements."  Apple did not reveal the Defects.

91.     Only after independent research was published online in mid-December 2017, demonstrating the marked degradation of performance in a large sampling of the Devices after installation of the Updates, did Apple attempt to start to come clean.  On December 20, 2017, Apple tacitly admitted that the Updates intentionally slowed the Devices (the "December 20 Admission") stating, in relevant part:

---

[2] As used herein, the term "Updates" refers, unless otherwise stated, to iOS 10.2.1 and iOS 11.2.  All of the iOS updates, however, issued by Apple prior to iOS 11.3 are part of Apple's misconduct and subsequent cover-up.  iOS 12.2 beta was released June 25, 2018.  Each of these later versions of iOS after iOS 11.2 are nothing more than Apple's attempt to further conceal the extent of its aberrant behavior.

Our goal is to deliver the best experience for customers, which includes overall performance and prolonging the life of their devices.  Lithium—ion batteries become less capable of supplying peak current demands when in cold conditions, have a low battery charge or as they age over time, which can result in the device unexpectedly shutting down to protect its electronic components.

Last year we released a feature for iPhone 6, iPhone 6s and iPhone SE to **smooth out** the instantaneous peaks only when needed to prevent the device from unexpectedly shutting down during these conditions. We've now extended that feature to iPhone 7, with iOS 11.2, and plan to add support for other products in the future.[3]

92.     The December 20 Admission, however, contained the further misrepresentation that the code was designed to "**smooth out**" allegedly "[unexpected] instantaneous peaks" in performance.  A downpour of media reports ensued, several of which used the more appropriate term—"throttle"—to define this "smooth[ing]" feature that Apple inserted into the code for the iOS 10.2.1 update.

93.     The batteries have a limited number of charge and discharge cycles, and they degrade over time.  The batteries give off current which is used to drive the processor (*i.e.* the chips) in each of the Devices to perform tasks *(i.e.* play video, open applications, transmit data, etc). The throttling via the Updates permitted Apple to have the batteries draw less current to run the Devices for the same amount of time as a new battery, but the trade-off was that the processing speed was slowed down.  This is akin to a driver going slower to get better gas mileage.  Over time, the "gas tank" shrinks further as new and more demanding iOS updates are added, meaning even slower performance as the processor originally provided with the Devices struggle—not only due to their own limitations—but the limitations of the batteries to provide enough power current to keep pace with the new demands (the "Battery Issues").  Given the constant iOS upgrades requiring the processors in Apple's Devices to perform more and more tasks, the batteries were inadequate for the Devices from day one, hence the Defects.

---

[3] Shara Tibiken, "Apple admits slowing older iPhones, says it's to prevent battery issues," *C/Net* (Dec. 20, 2017) (available online at https://www.cnet.com/news/apple-slows-down-older-iphone-battery-issues/#ftag=CAD-09-10aai5b) (last visited July 1, 2018).

94.     Worse yet, due to the Defects and Battery Issues, consumers would logically be required to continually recharge their Devices to attempt to refill the "gas tank" with more power. This constant recharging only feeds the further degradation of the battery.[4]  While Plaintiffs and the class need not attribute any motive behind Apple's intentional degradation of the Devices, it is evident that Apple continued to do so for the simple reason most frauds are committed: money. Although technically complex in part, the scheme was logical and simple:  The Devices were designed defectively, and Apple released software updates to conceal the Defects, all the while exacerbating the effects of the Defects—principally decreased performance—so that Device users had no choice but to purchase new batteries or upgrade their Devices, resulting in additional payments to Apple and a sustained (albeit forced) customer base.

95.     Further highlighting Apple's dependence on the "success" of its defective products, the Devices represented at least 70% of Apple's overall revenue for at least fiscal years 2013 to 2017 (nearly $800 billion), and to date.  Critically, in 2016—just prior to the first of the Updates—Apple was stumbling for the first time in 15 years in iPhone sales, was facing a saturated iPhone market, decreased sales of iPads (and even its Mac product line), the end or phasing out of third party vendor "two-year" service contracts, and increased competition overall.

96.     As such, a perfect storm was brewing for Apple, with a host of problems threatening its continued ability to profit in the smartphone and tablet markets.  *No time*, and ***particularly during 2016 and 2017***, was a good time for Apple to reveal that its Devices were defective.  And so, the sly saga progressed.

97.     Through this confluence of events, consumers were defrauded into purchasing Devices with Defects and Battery Issues (because Apple never disclosed the problems), new batteries, and even new devices.  Apple misrepresented material facts to consumers by representing each new device as faster with longer battery life, all the while omitting that any Defects or Battery

---

[4] Ironically, in Apple's U.S. Patent No. 9,912,186, issued March 6, 2018, and discussing charging techniques, it acknowledges that: "***Continued use of a lithium-polymer battery over time may also produce swelling in the battery's cells. . . a user of a device may not be aware of the battery's swelling and/or degradation until the swelling results in physical damage to the device.***"  The application for this patent was in process since at least 2011.

CLASS ACTION COMPLAINT                    14

Issues existed.  Because Apple put profits over its consumers, and deliberately misrepresented facts to make more profits, its scheme was willful and wonton, and with reckless disregard for its customers—Plaintiff and the class members.

## CHOICE OF LAW

98.     By using their Devices or downloading a software update, Device users are presented with the iOS Software License Agreement.[5] There are separate Software License Agreements for each version of iOS software including: iPhone iOS 3.1, iOS 4.1, iOS 5.0, iOS 5.1, iOS 6.0, iOS 7.0, iOS 8.0, iOS 8.1, iOS 9.0, iOS 9.1, iOS 10, iOS 11, and iOS 11.2. The agreements do not differ in material terms, and provide that California law governs the agreements.[6]

99.     To the extent they apply, the iOS Software Licensing Agreements are effective at the point of sale—as soon as the customers turn on their Devices—and are thus part of the benefit of the consumers' bargain.  Without the iOS, for which there is a purported licensing agreement, the Devices simply do not work.

100.     Apple elected to have California law govern all claims and disputes concerning the common software required to operate all of the Devices at issue in this lawsuit.  Accordingly, the application of California law to all of the class members' claims is fair, appropriate, and an election affirmatively made by Apple consistent in its agreements.

101.     By using their Devices, consumers are told that they agree to be bound by California law as consumers must run Apple's proprietary iOS to use their Devices.

102.     Apple's principal place of business is in California, marketing materials were written and design of the defective Devices occurred in California, and all of the fraudulent, deceptive, and unfair actions emanated from California.  California has an interest in ensuring that businesses located within its borders act lawfully.

103.     Accordingly, California law should apply to Plaintiffs' claims.[7]

---

[5]  Versions of those agreements for each iOS, incorporated herein by reference, are available at https://www.apple.com/legal/sla/ (last visited June 27, 2018).
[6] California law applies unless the consumer is based in the United Kingdom.

[7] Plaintiffs do not otherwise waive their ability to bring other claims via amendment.

**CLASS ALLEGATIONS**

104.    Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiffs seek certification of the following class:

**All purchasers, owners, users or lessees of the following Apple Devices: the Apple iPhone 5, 5s, 5c, 6, 6s 6 Plus, 6s Plus, SE, 7, 7 Plus, and the Apple iPad, including the Fourth Generation, Mini, Air, Mini 2, Update to Fourth Generation, Air 2, Mini 3, Mini 4, Pro, and 9.7-Inch Pro, Fifth Generation, 10.5-Inch Pro, 12.9-Inch Pro, and Sixth Generation.[8]**

105.    **Numerosity: Federal Rule of Civil Procedure 23(a)(1)**. The members of the class are so numerous and geographically dispersed that individual joinder of all class members is impracticable. Plaintiffs are informed and believe—based upon the publicly-available information discussed herein—that there are millions of class members, making joinder impracticable. Those individuals' identities are available through Apple's records, and class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

106.    **Commonality and Predominance: Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3)**. Apple has acted with respect to Plaintiffs and the other members of the proposed class in a manner generally applicable to each of them. There is a well-defined community of interest in the questions of law and fact involved, which affect all class members.  The questions of law and fact common to the class predominate over the questions that may affect individual class members, including the following:

     a.  Whether Apple designed, manufactured, advertised, promoted, and sold Devices that it knew contained Defects or Battery Issues, and withheld that information from consumers or purposefully misrepresented the Devices to consumers;

     b.  Whether Apple designed updated iOS to address Defects or Battery Issues in a manner that slowed the performance of those Devices;

     c.  Whether and to what extent Apple disclosed the effect of iOS Updates to Device

---

[8] Because Apple affirmatively concealed its fraud, equitable tolling principles apply so as to toll any applicable statute of limitations period.

CLASS ACTION COMPLAINT                    16

performance;

d.  Whether Apple used the iOS modification to profit from Plaintiffs and the other class members by inducing them to buy new replacements for their Devices;

e.  Whether Apple is subject to liability for fraudulently concealing material facts from Plaintiffs and the other class members;

f.  whether Apple is subject to liability for violating the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*;

f.  Whether Apple's conduct has violated the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

g.  Whether Apple's conduct has violated the Consumer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*;

h.  Whether Apple's conduct has violated Cal. Penal Code § 502;

i.  Whether Apple has been unjustly enriched as a result of its fraudulent conduct, such that it would be inequitable for Apple to retain the benefits conferred upon it by Plaintiffs and the other class members;

j.  Whether compensatory or consequential damages should be awarded to Plaintiffs and the other class members;

k.  Whether punitive damages should be awarded to Plaintiffs and the other class members;

l.  Whether restitution should be awarded to Plaintiffs and the other class members; and

m.  Whether other, additional relief is appropriate, and what that relief should be.

107.  **Typicality: Federal Rule of Civil Procedure 23(a)(3)**.  Plaintiffs' claims are typical of other class members' claims because Plaintiffs and class members were subjected to the same allegedly unlawful conduct and damaged in the same way.

108.  **Adequacy of Representation: Federal Rule of Civil Procedure 23(a)(4)**. Plaintiffs are adequate class representatives because their interests do not conflict with the interests of class members who they seek to represent, Plaintiffs have retained counsel competent and

experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

109. **Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)**. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Apple. Such individual actions would create a risk of adjudications that would be dispositive of the interests of other class members and impair their interests. Apple has acted and/or refused to act on grounds generally applicable to the class, making final injunctive relief or corresponding declaratory relief appropriate.

110. Injunctive relief is particularly necessary in this case because: (1) Plaintiffs desire to purchase products with the same qualities and attributes as Apple advertised the Devices to have; (2) if Apple actually manufactured Devices with the qualities and attributes as deceptively represented, Plaintiffs would purchase those Devices; (3) but Plaintiffs do not have the ability to determine whether Apple's representations are true concerning the Devices if they purchase such Devices in the future. Indeed, Plaintiffs, and putative class members, in the future will likely want to purchase Devices manufactured by Apple; however, they expect that Apple will not misrepresent or conceal defects in those Devices (or subsequently-released iPhones and iPads), and will provide clear explanations regarding the Updates to those Devices (without concealing or misrepresenting what the Updates will do).

111. **Superiority: Federal Rule of Civil Procedure 23(b)(3)**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Apple, so it would be impracticable for class members to individually seek redress for Apple's wrongful conduct. Even if class members could afford litigation, the court system could

not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

<strong>TOLLING OF APPLICABLE LIMITATIONS PERIODS</strong>

112.    Tolling principles—such as discovery rule tolling, fraudulent concealment tolling, and estoppel—prevent Apple from asserting any statute of limitations defense because of its concealment of Plaintiffs' ability to recognize and bring claims as described herein.

<strong>CLAIMS FOR RELIEF</strong>

<strong><u>COUNT 1</u></strong>

<strong>VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT,</strong>

<strong>18 U.S.C. § 1030, <em>et seq.</em></strong>

113.    The Plaintiffs identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the class, repeats and alleges Paragraphs 1-112, as if fully alleged herein.

114.    Apple caused Plaintiff and class members to download and install iOS Updates to their Devices without informing its customers that the iOS Updates contained code that would diminish Device performance, or throttle performance, in order to compensate for undisclosed Defects in those Devices.  Accordingly, Plaintiff and class members did not give permission for Apple to install iOS Updates onto their Devices—nor could they—as Apple did not provide material information to Plaintiff and class members regarding the updates.

115.    Apple violated 18 U.S.C. § 1030(a) by knowingly causing the transmission of iOS software Updates to Plaintiff and class members' devices to access, collect, and transmit information to Devices, which are protected computers as defined in 18 U.S.C. § 1030(e)(2)(B) because they are used in interstate commerce and/or communication.  By transmitting information to class members' Devices, Apple intentionally caused damage without authorization to class members' devices by impairing the ability of those Devices to operate as warranted, represented, and advertised.

116.    Apple violated 18 U.S.C. § 1030(a)(5)(A)(iii) by intentionally accessing Plaintiff and class members' Devices—protected computers—without authorization, and as a result, caused damage to Plaintiff and class members' Devices by impairing the integrity of those Devices.

117.    Apple's conduct has caused loss to Plaintiff and class members in real, economic damages.  Plaintiff and class members have additionally suffered loss by reason of these violations, in terms of added expense in operating their Devices, which have been throttled, or in the purchase of new, unthrottled Devices.

118.    Unless Apple is restrained and enjoined, Apple will continue to commit such acts. Plaintiff's remedy at law is thus inadequate to compensate for these inflicted and threatened injuries, entitling Plaintiff to remedies including injunctive relief as provided by § 1030(g).

## COUNT 2

### VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT,

### Cal. Civ. Code § 1750, *et seq.*

119.    The Plaintiffs identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the class, repeats and alleges Paragraphs 1-112, as if fully alleged herein.

120.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

121.    In accordance with the liberal application and construction of the CLRA, application of the CLRA to all class members is appropriate, given that Apple's conduct as described herein originated from California, the Devices and iOS code were designed and originated in California, and Apple's uniform iOS Software License Agreement provides that California law shall apply.

122.    Apple's uniform iOS Software License Agreement governs the reach of the class's claims because Apple's violations of the CLRA were caused, in part, by the installation of certain

operating software that throttled Device performance in order to further conceal the Defects and Battery Issues in Apple's Devices.

123.    Apple is a "person" as defined by Civil Code §§ 1761(c) and 1770, and has provided "services" as defined by Civil Code §§ 1761(b) and 1770.

124.    Plaintiff and the class members are "consumers" as defined by Civil Code §§ 1761(d) and 1770, and have engaged in a "transaction" as defined by Civil Code §§ 1761(e) and 1770.

125.    Apple's acts and practices were intended to and did result in the sales of products and services to Plaintiff and the class members in violation of Civil Code § 1770, including:

    a.  Representing that goods or services have characteristics that they do not have;

    b.  Representing that goods or services are of a particular standard, quality, or grade when they were not;

    c.  Advertising goods or services with intent not to sell them as advertised; and

    d.  Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

126.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

127.    Had Apple disclosed to Plaintiffs and class members that it misrepresented the Devices and operating software, omitted material information regarding the Defects and Battery Issues, omitted material information regarding the operating software, and was otherwise engaged in common business practices that ultimately hurt consumers, Apple would have been unable to continue in business and it would have been forced to disclose the uniform defects in its Devices. Instead, Apple represented that its Devices were continually improving in speed and battery life and performed better than other devices on the market.  Plaintiff and the class members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

---

CLASS ACTION COMPLAINT                    21

128.    As a direct and proximate result of Apple's violations of California Civil Code §
1770, Plaintiff and class members have suffered and will continue to suffer injury, ascertainable
losses of money or property, and monetary and non-monetary damages, including from not
receiving the benefit of their bargain in purchasing the Devices, and increased time and expense in
dealing with Device performance issues.

129.    Apple has already received notice of the class members' intent to seek damages in
compliance with California Civil Code § 1782(a).

130.    Plaintiffs seek all monetary and non-monetary relief allowed by law, including
damages, an order enjoining the acts and practices described above, attorneys' fees, and costs under
the CLRA.

## COUNT 3

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW,

### Cal. Bus. & Prof. Code § 17200, *et seq.*

131.    The Plaintiff(s) identified above ("Plaintiff," for purposes of this Count),
individually and on behalf of the class, repeats and alleges Paragraphs 1-112, as if fully alleged
herein.

132.    In accordance with the liberal application and construction of the UCL, application
of the UCL to all class members is appropriate, given that Apple's conduct as described herein
originated from California, the Devices and iOS code were designed and originated in California,
and Apple's uniform iOS Software License Agreement provides that California law shall apply.

133.    Apple's uniform iOS Software License Agreement governs the reach of the class's
claims because Apple's violations of the UCL were caused, in part, by the installation of certain
operating software that throttled Device performance in order to further conceal the Defects and
Battery Issues in Apple's Devices.

134.    Apple is a "person" as defined by Cal. Bus. & Prof. Code §17201.

135.    Apple violated Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL") by engaging in
unlawful, unfair, and deceptive business acts and practices.

---

CLASS ACTION COMPLAINT                    22

136.    Apple's "unfair" acts and practices include:

    a.    Knowingly designing, developing, manufacturing, advertising, and selling Devices with significant defects that result in the Devices not operating as intended, represented, or advertised under normal usage;

    b.    Developing software Updates that merely hide the aforementioned Defects and Battery Issues by throttling Device performance, resulting in the Devices operating at slower speeds than intended, represented, or advertised under normal usage;

    c.    Concealing material information from consumers regarding its Devices, the Battery Issues, and Defects so that consumers were unable to make informed choices when purchasing the Devices;

    d.    Concealing material information from consumers regarding the Updates to operating software, so that consumers would not, nor could they, know that the Updates throttled their Devices; and

    e.    Using uniform, deceptive business practices such as throttling software to slow down Devices, requiring consumers to spend additional money on replacement batteries or Devices as a result of the Defects and Battery Issues.

137.    Apple has engaged in "unlawful" business practices by violating multiple laws, including the CLRA, Cal. Civ. Code §§ 1780, *et seq.*, and California common law.

138.    Apple's unlawful, unfair, and deceptive acts and practices include:

    a.    Knowingly designing, developing, manufacturing, advertising, and selling Devices with significant defects that result in the Devices not operating as intended, represented, or advertised under normal usage;

    b.    Developing software Updates that merely hide the aforementioned Defects and Battery Issues by throttling Device performance, resulting in the Devices operating at slower speeds than intended, represented, or advertised under normal usage;

    c.    Concealing material information from consumers regarding its Devices, the Battery Issues, and Defects so that consumers were unable to make informed choices when

purchasing the Devices;

    d.  Concealing material information from consumers regarding the Updates to operating software, so that consumers would not, nor could they, know that the Updates throttled their Devices; and

    e.  Using uniform, deceptive business practices such as throttling software to slow down Devices, requiring consumers to spend additional money on replacement batteries or Devices as a result of the Defects and Battery Issues.

139.    Apple violated § 17200's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of its Devices.  As alleged more fully herein, apple's marketing and sale of Devices, and more specifically its failure to inform customers of the negative and throttling impact iOS Updates would have on those Devices, violated Cal. Civ. Code § 1750, *et seq.*, common law, and other statutory violations as alleged herein.  Plaintiff reserves the right to allege other violations of the law, which constitute other unlawful business acts and practices.  Apple's conduct is ongoing and continues to this date.

140.    Apple violated § 17200's prohibition against unfair conduct by failing to inform its customers about the Defects and Battery Issues in the Devices; engaging in a pattern or practice of concealing those facts and urging its customers to install regular updates to the iOS software to throttle those devices—thereby depriving those Device owners of the performance of those devices that existed at the time of purchase.  This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct— crippling Devices that are, in many instances, consumers' lifelines—outweighs any alleged benefit.  Specifically, the utility gained by "upgrading" the iOS software of the Devices was outweighed by the diminishment of the Device functionality.  Apple engaged in this conduct at the expense of its customers' rights when other, lawful alternatives were available (such as providing customers with full information about the Devices and iOS software, or offering batteries to customers who experienced Battery Issues).

141.    Apple engaged in this conduct to gain an unfair commercial advantage over its competitors, seeking to avoid public knowledge of the Battery Issues and Defects in its Devices to avoid damage to its sales or reputation.  It withheld critical and material information from Plaintiff and class members, competitors, and the marketplace, all to its unfair competitive advantage.

142.    Apple's business practices, as alleged herein, constitute fraudulent conduct because they were likely to deceive, and did deceive, class members into purchasing Devices, and upgrading those Devices with iOS Updates, when those Devices were defective and the Updates would only throttle the Devices instead of fixing them.

143.    Apple's representations and omissions—all which emanated from California—were material because they were likely to deceive reasonable consumers.

144.    California law prohibits unauthorized computer access and fraud pursuant to Cal. Penal Code § 502.

145.    As a result of Apple's installation of iOS Upgrades on Plaintiff's and class members' devices, Apple knowingly accessed and without permission altered, damaged, deleted, destroyed, and otherwise used any data stored on Plaintiff's and class members' devices.

146.    Plaintiff and class members did not know that Apple's iOS Update would throttle Device performance; accordingly, Apple did not have permission to install iOS Updates on class members' Devices.

147.    Apple accessed and without permission altered and used data on class members' Devices to execute a scheme or artifice to defraud the class members' by, among other things, maintaining market share, convincing Plaintiff and class members to purchase new Devices, and to otherwise ensure that Plaintiff and class members would not discover Apple's underlying fraud regarding its omissions and misrepresentations regarding the Devices.  As a result, Apple violated Cal. Penal Code § 502.

148.    The iOS Updates led to the deterioration of the Devices and functionality of the Devices as a whole, driving customers to purchase new Devices who would not have outlaid the

additional costs had they known the truth, and Apple not concealed the Device Defects and Battery Issues.

149.    As a direct and proximate result of Apple's unfair, unlawful, and fraudulent acts and practices, Plaintiff and class members were injured and lost money or property, including from not receiving the benefit of their bargain in purchasing the Devices, and increased time and expense in dealing with Device performance issues.

150.    Apple acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff and class members' rights.  Apple's knowledge of the Devices' performance issues, and release of software to throttle phone performance, put it on notice that the Devices were not as it advertised.

151.    Plaintiff and class members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Apple's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

<u>COUNT 4</u>

**VIOLATIONS OF CALIFORNIA'S FALSE AND MISLEADING**

**ADVERTISING LAW,**

**Cal. Bus. & Prof. Code § 17500, *et seq.***

152.    The Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the class, repeats and alleges Paragraphs 1-112, as if fully alleged herein.

153.    Apple's acts and practices, as described herein, have deceived and/or are likely to continue to deceive class members and the public.  As described in Counts I and II above, and throughout this Complaint, Apple misrepresented the Devices, concealed the Devices' defects and Battery Issues, concealed the throttling capabilities of its updated operational software, and misrepresented the purpose of iOS Updates.

154.     By its actions, Apple disseminated uniform advertising regarding iOS Updates based out of California, and governed by California law.  The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq.*  Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

155.     The above-described false, misleading, and deceptive advertising Apple disseminated continues to have a likelihood to deceive in that Apple failed to disclose the true nature of the iOS Updates and the Devices.  Apple failed to instigate a public information campaign to alert consumers of the Defects and Battery Issues and the iOS Updates.  Instead, Apple continued to misrepresent the true nature of the iOS Updates and the Devices, continuing to deceive consumers.

156.     Apple continued to misrepresent to consumers that its Devices were fast and had long battery lives, however, the Devices contained Defects and Battery Issues.  Had Apple disclosed those issues, rather than falsely advertising the Devices' properties, consumers would have not purchased or paid significantly less for the Devices.

157.     In making and disseminating the statements alleged herein, Apple knew, or should have known, its advertisements were untrue and misleading in violation of California law.  Plaintiff and other class members based their purchasing decisions on Apple's omitted material facts.  The revenues to Apple attributable to products sold in those false and misleading advertisements amount to hundreds of millions of dollars.  Plaintiff and class members were injured in fact and lost money and property as a result.

158.     The misrepresentations and non-disclosures by Apple of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute violations of Cal. Bus. & Prof Code § 17500, *et seq.*

As a result of Apple's wrongful conduct, Plaintiff and the class members lost money.  Plaintiff and the class members are therefore entitled to restitution as appropriate for this cause of action.

## COUNT 5

### CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT,

### Cal. Penal Code § 502, *et seq.*

159.    The Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the class, repeats and alleges Paragraphs 1-112, as if fully alleged herein.

160.    In pushing Updates to its iOS to unsuspecting users of its Devices, Apple violated the California Penal Code, Computer Data Access and Fraud Act, Cal. Penal Code § 502, *et seq.*

161.    When Apple provided iOS Updates to consumers—Plaintiffs and class members— they did not know, nor could they in the exercise of reasonable diligence know, that the software Updates contained code that would throttle their Devices, designed solely to further conceal the Defects and Battery Issues in those Devices.

162.    Because consumers did not know that the iOS Updates contained such throttling code, they did not give Apple permission to access their Devices to alter the data or computer systems on those Devices.

163.    Apple provided the iOS Updates to consumers as part of a scheme or artifice to defraud and deceive, because it provided the Updates to consumers ***instead of*** informing them of the Defects and Battery Issues inherent on their Devices.  Indeed, Apple could have informed consumers that the Battery Issues they were having with their Devices could be resolved via a battery replacement.  Apple instead chose concealment, and throttling Devices via the installation of software that would do so.

164.    Apple offered iOS Updates to consumers to throttle their Devices as a means to encourage consumers to purchase new devices, wrongfully obtaining money from those consumers.

165.    By offering the iOS Updates to consumers, instead of revealing the truth, Apple disrupted or caused the disruption of consumer services when it improperly and unlawfully throttled users and class members' Devices.  Plaintiffs and class members did not consent to having their

---

Devices throttled, and had they known that the iOS Updates would throttle their Devices, they would not have installed the iOS Updates.

166.    As a result of Apple's unlawful conduct, Plaintiffs and class members were damaged in an amount to be determined at trial.

## COUNT 6

## TRESPASS TO CHATTELS

167.    The Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the class, repeats and alleges Paragraphs 1-112, as if fully alleged herein.

168.    California common law prohibits the intentional intermeddling with personal property in the possession of another, without consent, that results in either a) the deprivation of the use of that personal property; or b) the impairment of the condition, quality, or usefulness of the property.

169.    Apple impaired the condition, quality, and usefulness of Plaintiff and class members' Devices, or parts of them, without their knowledge or consent.  Such acts constituted an intentional interference with the use and enjoyment of the Devices.

170.    Apple acted intentionally, because it knew that Plaintiff and class members were downloading computer software onto their Devices that reduced the performance of the Devices. Plaintiff and other class members only consented to the installation of iOS Updates that would improve performance, not diminish performance.

171.    Apple engaged in deception to gain access to the Devices and install new computer software or iOS Updates.

172.    Plaintiff and class members suffered actual damages as a result of Apple's actions in an amount to be determined at trial.

173.    Furthermore, Plaintiff seeks punitive damages because Apple's trespass was committed from wanton or malicious motives, or reckless disregard of the rights of Plaintiff and the class, for the purpose of concealing the Defect.

## COUNT 7

### FRAUD

174.    The Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the class, repeats and alleges Paragraphs 1-112, as if fully alleged herein.

175.    At the time Plaintiff and class members purchased their Devices, Apple did not disclose, but instead concealed and misrepresented, the Battery Issues and Defects in the Devices as discussed herein.

176.    Further, Apple represented that Updates to its iOS were designed to improve Device performance, and otherwise resolve issues that could have a negative impact on Plaintiffs' and class members' device experiences.

177.    Apple omitted that the Updates to its iOS were actually designed to further conceal the Defects and Battery Issues in the Devices.  Further, Apple omitted and affirmatively misrepresented the true reason for the Updates for its Devices—that such Updates were designed to downgrade Device speed and processing capabilities in order to disguise fundamental Device Defects and Battery Issues.

178.    Apple knew, or should have known, that these Updates were falsely portrayed to the consumer public.

179.    Apple also knew that its omissions and misrepresentations regarding the Updates and Devices were material, and that a reasonable consumer would rely upon Apple's representations (and corresponding omissions) in making purchasing decisions.

180.    Apple, by its clear admissions in December 2017, in fact intended to deceive Plaintiff and class members.

181.    Plaintiff and class members did not know—nor could they have known through reasonable diligence—about the Defects and Battery Issues in the Devices, nor could they have known about what the Upgrades were designed to really do.

182.     Plaintiff and class members would have been reasonable in relying on Apple's misrepresentations (and corresponding omissions) in making their purchasing decisions and downloading Updates.

183.     Plaintiff and class members had a right to rely upon Apple's representations (and corresponding omissions) as Apple maintained a monopolistic control over what the Updates to the iOS included, and what information was available regarding the Defects and Battery Issues in the Devices, when Updates were provided to consumers, how those Updates were promoted to consumers, and why consumers should update their iOS.

184.     Plaintiff and class members sustained damages as a result of their reliance on Apple's omissions and misrepresentations, thus causing Plaintiff and class members to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

## COUNT 8

### BREACH OF CONTRACT

185.     The Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the class, repeats and alleges Paragraphs 1-112, as if fully alleged herein.

186.     Apple solicited and invited Plaintiffs and class members to buy new Devices. Plaintiff and class members accepted Apple's offers and bought Devices from Apple.

187.     Plaintiff and class members formed contracts with Apple at the time they purchased their Apple Devices.  The terms of the contracts include promises and affirmations made by Apple on its website and through marketing that the Devices would perform as advertised, even after updating the latest iOS.

188.     Further, Plaintiff and class members entered into implied contracts with Apple wherein Apple agreed not to purposefully interfere with, negatively affect, or otherwise harm Plaintiff's and class members' Devices or usage of the Devices.

189.    Updates to the iOS are governed by an agreement that provides that California law shall govern the agreement between Plaintiff and class members on one hand, and Apple on the other.

190.    Plaintiff reasonably relied upon representations that the Devices would perform as advertised and warranted, and class members would be reasonable in relying upon those same representations.

191.    Plaintiff and class members performed their obligations under their contracts with Apple.

192.    Apple's Devices did not perform as advertised or promised.  Accordingly, Apple breached its contract with customers.

193.    As a result of Apple's breach, Plaintiff and class members have been damaged in an amount equal to the purchase price of the Devices.

194.    All conditions precedent to Apple's liability under its contractual obligations, including notice, have been performed by Plaintiff and the class.

## COUNT 9

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

195.    The Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the class, repeats and alleges Paragraphs 1-112, as if fully alleged herein.

196.    In every contract or agreement there is an implied promise of good faith and fair dealing under California law.

197.    As described herein, contracts with California choice of law provisions govern the agreements between Apple and its customers.

198.    In dealings between Apple and its customers, Apple has power affecting the rights of its users.

199.    Apple entered into contracts with the class members and the Plaintiff at the time of the download of the iOS Updates.

200.     Apple contractually promised in the iOS 10.2.1 update and later Updates to "deliver the best experience for its customers, which includes overall performance and prolonging the life of their devices."

201.     Each Plaintiff did all, or substantially all, of the things that the contracts required them to do.

202.     The iOS 10.2.1 update throttled Device performance as a means to mitigate issues customers were experiencing with Battery Issues.

203.     Apple did not inform customers that, rather than throttling devices by installing iOS 10.2.1, those customers could replace the batteries in their Devices.

204.     Despite its contractual promises to prolong the life of the devices, Apple instead purposefully took actions to reduce the life of the devices, and purposefully failed to notify customers that replacing the battery would restore performance that had been artificially throttled by iOS 10.2.1 and later updates to iOS.

205.     Apple's actions were objectively unreasonable given Apple's promises.

206.     Apple's conduct evaded the spirit of the bargain made between Apple and the Plaintiff and class members.

207.     As a result of Apple's misconduct and breach of its duty of good faith and fair dealing, Plaintiff and the class suffered damages.  Plaintiff and the class members did not receive the benefit of the bargain for which they contracted and for which they paid valuable consideration.

## COUNT 10

### MONEY HAD AND RECEIVED

208.     The Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the class, repeats and alleges Paragraphs 1-112, as if fully alleged herein.

209.     As a result of the Plaintiff's and class members' purchase of the Devices, Apple obtained money for its own use and benefit, and, as a result of its breaches of contract and breaches

of the good faith and fair dealing implied in those agreements, became indebted to the Plaintiff and class members in an amount to be determined at trial.

210.    No part of any of the monies due and owing to Plaintiff and class members has been repaid, although Plaintiff and class members demand repayment, leaving the balance due, owing, and unpaid in an amount to be determined at trial plus interest.

## COUNT 11

### QUASI-CONTRACT / UNJUST ENRICHMENT

211.    The Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the class, repeats and alleges Paragraphs 1-112, as if fully alleged herein.  This claim is brought in the alternative to contract-based causes of action.

212.    Plaintiff and class members purchased Devices from Apple, and those Devices were not as Apple represented them to be, enticing Plaintiff and the class to purchase the Devices.  Had Plaintiff and the class known of the Defects, they would have paid less for their Devices and would not have paid for repairs, service or upgrades caused by the Defect.

213.    Accordingly, Plaintiff and class members were damaged, and Apple was unjustly enriched by the purchase price of those Devices.

214.    Plaintiff and class members are entitled to damages in the amount Apple was unjustly enriched, to be determined at trial.

215.    Furthermore, Apple's conduct was willful, intentionally deceptive, and intended to cause economic injury to Plaintiff and the class.  Apple is therefore liable to pay punitive damages under California law.

### PRAYER FOR RELIEF

216.    WHEREFORE, Plaintiffs, individually and on behalf of all other class members, respectfully request that the Court enter an Order:

a.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as class Representatives, and appointing Plaintiffs' attorneys as class Counsel;

b.      Enjoining Apple from continuing the unfair business practices alleged in this Complaint;

c.      Ordering Apple to pay actual and statutory damages (including punitive damages) and restitution to Plaintiffs and the other class members, as allowable by law;

d.      Ordering Apple to pay both pre- and post-judgment interest on any amounts awarded;

e.      Ordering Apple to pay attorneys' fees and costs of suit; and

f.      Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.


Respectfully submitted,

DATED:  July 2, 2018          /s/ *Joseph W. Cotchett*
                              Joseph W. Cotchett

                              Joseph W. Cotchett (SBN 36324)
                              Mark C. Molumphy (SBN 168009)
                              **COTCHETT, PITRE & MCCARTHY, LLP**
                              San Francisco Airport Office Center
                              840 Malcolm Road, Suite 200
                              Burlingame, CA 94010
                              Tel: (650) 697-6000
                              Fax: (650) 697-0577
                              jcotchett@cpmlegal.com
                              mmolumphy@cpmlegal.com

DATED:  July 2, 2018          /s/ *Laurence D. King*
                              Laurence D. King

                              Laurence D. King (SBN 206423)
                              **KAPLAN FOX & KILSHEIMER LLP**
                              350 Sansome Street, Suite 400
                              San Francisco, CA 94104
                              Tel:  (415) 772-4700
                              Fax:  (415) 772-4707
                              lking@kaplanfox.com
                              *Counsel for Plaintiffs*

CLASS ACTION COMPLAINT          35

Daniel C.  Levin
**LEVIN SEDRAN BERMAN**
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106-3697
Tel: (877) 882-1011
Fax: (215) 592-4663

*Counsel for Plaintiffs:*
*Alex Rodriguez, Heidi Valle, Ida Villegas, Brandi*
*S. White, Tamica Gordon, Rifah Alexander,*
*Kenyotta Smith, Judith Thompson, Jhonjulee Ray,*
*Aja Liana Johnson, Mary Jackson, Alvin Davis,*
*Michelle Martino, Kevin Browne, Brinley McGill,*
*Sarah Stone, Darlane M. Saracina, Beckie Erwin,*
*Denise Bakke, Tonya Thompson, Andrew*
*Yashchuk, Drew Victory*

James Vlahakis
**SULAIMAN LAW GROUP**
2500 South Highland Ave, Suite 200
Lombard, IL 60148
Tel: (312) 313-1613

*Counsel for Plaintiffs:*
*Loren Haller, Jonathan David, Laura Gail*
*Diamond, Steven Connolly, Bryan Schell, Aisha*
*Boyd, Irwin Darack, Linda Sauer, Alisha Boykin,*
*Tammy Greenfield, Natasha Bryant, John Farris,*
*Herman Praszkier, Lawrence Pethick, Steven*
*Henry, Timothy Baldwin, Kristin Hansen, Jill*
*Klingman, Barbara Moriello, Thomas Toth, Caren*
*Schmidt, Jacquelyn O'Neill, Jodi Johnson, Henry*
*Becker, Kyle Herman, Quinn Lewis, Hanpeng*
*Chen, Kaixuan Ni, Linda Sonna, Sherri Yelton*

Gayle M. Blatt
**CASEY GERRY**
110 Laurel St.
San Diego, CA 92101-1486
Tel: (619) 238-1811
Fax: (619) 544-9232

*Counsel for Plaintiffs:*
*Daphne Bowles Rodriguez, Susan Rutan, Megan*
*Mesloh, Stephen Heffner, Brian Macinanti,*
*Georgiana D'Allesandro, Aurelia Flores, Nakul*
*Chandra, Burim Daci, Pedro Espejo, Roman*
*Dubianskii, Heekyung Jo, Youngro Lee, Kushagra*
*Sharma*

Phong Tran
**JOHNSTON FISTEL**
655 West Broadway, Suite 1400
San Diego, CA 92101
Tel: (619) 230-0063
Fax: (619) 255-1856

*Counsel for Plaintiffs:*
*Jason Ratner*

Kathleen Herkenhoff
**HAEGGQUIST ECK**
225 Broadway, Suite 2050
San Diego, CA 92101
Tel: (619) 342-8000
Fax: (619) 342-7878

*Counsel for Plaintiffs:*
*Brandon Farmer, Patrick DeFellippo*

Anthony Simon
**SIMON LAW FIRM**
800 Market St., Suite 1700
St. Louis, MO 63101
Tel: (855) 809-7080

*Counsel for Plaintiff:*
*Eric Tanovan, Charlie Daily*

Stephen Rosenthal
**PODHURST ORSECK**
SunTrust International Center
One S.E. 3rd Ave, Suite 2300
Miami, FL  33131
Tel: (305) 358-2800

*Counsel for Plaintiffs:*
*Christopher Gautreax, Kristopher Kingston, Adam*
*Shapiro, Shiriam Torres*

Matthew George
**KAPLAN FOX KILSHEIMER**
350 Sansome Street
Suite 400
San Francisco, CA 94104
Tel: (415) 772-4700
Fax: (415) 772-4707

*Counsel for Plaintiff:*
*Angela Boykin*

David Straite
**KAPLAN FOX**
850 Third Avenue, 14th Floor
New York, NY 10022
Tel: (800) 290-1952

*Counsel for Plaintiffs:*
*Arisa Wakabayashi, Juliana Caceres*

### ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Mark C. Molumphy, attest that concurrence in the filing of this document has been obtained from the other signatory.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 2nd day of July, 2018, at Burlingame, California.

*/s/ Mark C. Molumphy*
MARK C. MOLUMPHY